IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NAITRAJ DAVID,
          Plaintiff

v.                                                      Case No. 3:21-cv-465

CITY OF RICHMOND POLICE
DEPARTMENT,
          Defendant.

## OPINION

The plaintiff, Naitraj David, alleges that the defendant, the City of Richmond Police Department ("RPD"),[1] discriminated against him due to his race, national origin, and age, and retaliated against him for participating in protected activities. David's complaint arises from the promotion of another officer, rather than David, to an Acting Sergeant position in the RPD. Unlike David, the promoted officer is white, under the age of forty, and ineligible to serve as an Acting Sergeant. RPD moves to dismiss David's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 23.) Because David sufficiently pleads that race, national origin, and age served as the basis of RPD's decision to not promote David to Acting Sergeant, David's discrimination claims survive RPD's motion. David's retaliation claim also survives because David sufficiently alleges that RPD took materially adverse action against him for raising discrimination claims. The Court will, therefore, deny RPD's motion.

---

[1] David names RPD as the defendant. RPD "is not a suable entity separate and apart from the City of Richmond." *Dance v. City of Richmond*, No. 3:09cv423, 2009 WL 2877152, at *4 n.3 (E.D. Va. Sept. 2, 2009) (citing *Davis v. City of Portsmouth*, 579 F. Supp. 1205, 1210 (E.D. Va. 1983), *aff'd* 742 F.2d 1448 (4th Cir. 1984)). The Court, therefore, will substitute the City of Richmond as the defendant.

## I. FACTS ALLEGED IN SECOND AMENDED COMPLAINT

### *A. Discrimination Allegations*

In November 2019, an Acting Sergeant position became available in the RPD. Acting Sergeant is a temporary assignment that provides additional pay to those filling the position. According to RPD policy, only Master Patrol Officers ("MPOs") may fill this position.[2] At the time, David—an Asian American of Trinidadian Indian descent who is over the age of forty—was just one of two MPOs qualified to fill the Acting Sergeant position. George Banks, an African American male who is also more than forty years old, was the other MPO eligible to fill the position. Since David became an officer with RPD in 2007, he has served as an Acting Sergeant eight times.

Rather than selecting David or Banks to serve as Acting Sergeant, Captain Daniel Minton chose Officer David Marakovich—a white officer under the age of forty—for the position. David complained to Minton about this decision and the discriminatory terms and conditions of his employment. In response, Minton informed David that he selected Marakovich for the position to assess Marakovich's performance and to determine whether to permanently promote him to Sergeant. Minton also told David that RPD's human resources department found that Minton did not act discriminatorily in making this appointment. Minton's decision ultimately prevented David from receiving both the salary increase that comes with the Acting Sergeant position and consideration for a permanent promotion.[3]

---

[2] MPOs are "sworn members who have exhibited a high degree of professionalism and commitment to the [RPD] but do not wish to pursue the traditional managerial career track of supervisory promotions." (ECF No. 21-1, at 1.)

[3] Although RPD policy appears to remove David, as an MPO, from consideration for a *supervisory* promotion, (*id.*), the Acting Sergeant position might have provided David the

2

In December 2019, David complained to senior RPD leadership about Minton's decision not to select him for the Acting Sergeant position and the discriminatory terms and conditions of his employment. RPD's human resources department opened an investigation into the matter the following month. In March 2020, David received notice that the investigation had concluded. The investigation found that Minton's selection of Marakovich violated RPD policy, but that Minton did not discriminate by appointing Marakovich to Acting Sergeant. On June 22, 2020, David filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that RPD discriminated against him based on his race, national origin, and age when it selected Marakovich for the Acting Sergeant position.[4]

### B. Retaliation Allegations

Starting in May 2020, Sergeant Jeremy Nierman retaliatorily acted against David eight times based on David's discrimination complaints to RPD leadership and the EEOC.[5] First, upon assigning David to respond to protests in Richmond from May to September 2020, Nierman "showed very little concern for [David's] safety" by failing to provide David and his partner with proper protective equipment and additional support. (*Id.* ¶ 36.) Second, when Officer Fowler—a more junior officer than David—took David's car keys and prodded David to fight him for them, Nierman did nothing. Third, on June 13, 2020, Nierman stated that he wished to "take David's stripes." (*Id.* ¶ 34.) David filed his EEOC complaint nine days later.

---

opportunity to show that he deserved consideration for a permanent *non-supervisory* promotion. The Court draws this reasonable inference in David's favor.

[4] The EEOC issued notice of David's right to sue on April 19, 2021.

[5] David alleges that Nierman committed "additional" retaliatory acts *after* David filed the EEOC charge. (ECF No. 21 ¶ 33.) The Court construes this allegation to mean that any retaliatory acts occurring *before* David filed the EEOC charge pertain to David's earlier complaints of discrimination to RPD leadership.

3

On July 18, 2020, a fourth incident arose when Nierman falsely told another sergeant that David and his partner "were out of their designated patrol area." (*Id.* ¶ 35.) David complained to RPD's human resources department and senior RPD leadership regarding Nierman's retaliation twelve days later.

Between July and September 2020, Nierman retaliated against David three more times. First, when David informed Nierman that he could not locate a written report, Nierman responded, "You know, that's a write-up." (*Id.* ¶ 39.) Second, Nierman allowed a more junior officer to take the keys to David's assigned vehicle without first asking David. Third, Nierman asked a new MPO to assist with rollcall, but did not extend this same offer to David or Banks.

The final retaliatory incident occurred in June 2021 when David received a formal written reprimand for not appearing in Juvenile and Domestic Relations Court. Before this incident, David had never faced any disciplinary action in his nearly fourteen years as a member of RPD. Moreover, RPD has not historically issued such reprimands to officers for failing to make such appearances.

## II. DISCUSSION

In his amended complaint, David brings four counts against RPD: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) national origin discrimination in violation of Title VII; (3) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"); and (4) retaliation for engaging in protected activity in violation of Title VII. RPD moves to dismiss David's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[6]

---

[6] A Rule 12(b)(6) motion gauges a complaint's sufficiency without resolving any questions about the facts or testing the claims' merits. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When considering the motion, the court must accept all allegations in the

4

In support of its motion, RPD contends that David pleads no facts demonstrating that it discriminated against David due to his race, national origin, or age. RPD also argues that David does not sufficiently allege that RPD engaged in retaliatory conduct. The Court disagrees.

### A. *Race and National Origin Discrimination Claims under Title VII (Counts 1–2)*[7]

David sufficiently pleads race and national origin discrimination claims under Title VII. A Title VII "'plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002)), *cert. denied*, 141 S. Ct. 1376. Instead, a plaintiff must merely "allege facts to satisfy the elements of a cause of action *created by that statute*." *Id.* (emphasis added) (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015)). Title VII forbids employers from "discriminat[ing] against any individual [1] with respect

---

complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The principle that the court must accept all allegations as true, however, does not apply to conclusory statements and legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

[7] "Before a Title VII plaintiff can bring a formal suit, he must file an administrative charge with the [EEOC]." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). The EEOC charge "frames the scope of future litigation," *id.*, such that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit," *id.* (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). Any claims that fall outside these bounds fail as "procedurally barred." *Id.* at 509 (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)). David's EEOC complaint included claims of race and national origin discrimination based on RPD's selection of Marakovich for the Acting Sergeant position. Because David's allegations here mirror those in his EEOC complaint, the Court finds that David has satisfied Title VII's exhaustion requirement.

to his compensation, terms, conditions, or privileges of employment, [2] because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Accordingly, courts must assess whether the allegations "plausibly state a violation of Title VII 'above a speculative level.'" *Bing*, 959 F.3d at 617 (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). David meets this standard.

### 1. *Compensation, Terms, Conditions, or Privileges of Employment*

David sufficiently pleads that the allegedly discriminatory selection of Marakovich negatively affected "his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). An employee's opportunities for promotion and additional pay qualify as terms or conditions of employment. *See Boone v. Golden*, 178 F.3d 253, 256 (4th Cir. 1999); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666–67 (4th Cir. 2018). In *Ray*, the Fourth Circuit recognized that the employer committed an adverse employment action by denying the plaintiff the chance to perform voluntary overtime work, and thus achieve additional pay, even though the plaintiff suffered no pecuniary loss. 909 F.3d at 667. The same situation exists here, as RPD's selection of Marakovich caused David no pecuniary loss, but did prevent him from "receiv[ing] the salary increase that comes with the Acting Sergeant position."[8] (ECF No. 21 ¶ 26.) RPD's action also allegedly harmed David's opportunities for permanent promotion. Thus, David sufficiently alleges that RPD's actions affected the terms and conditions of his employment.

### 2. *Race and National Origin as Basis of Claim*

David also sufficiently pleads that RPD did not select him as Acting Sergeant because of his race and national origin. The Fourth Circuit has recognized that "while the allegation that non-

---

[8] When drawing all reasonable inferences in David's favor, the Court assumes that the amount of additional pay that David missed out on sufficiently affected the terms and conditions of his employment. *See id.* at 668.

6

[minority] decisionmakers hired non-[minority] applicants is *consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias." *McCleary-Evans*, 780 F.3d at 586 (emphasis in original). Instead, plaintiffs must allege more, such as that the employer ultimately selected an individual who performed worse during interviews or lacked the proper qualifications or experience for the position. *Id.*

David makes such a showing here. David alleges that Minton selected Marakovich—a white officer who lacked eligibility for the Acting Sergeant position—over two minority MPOs, both of whom *were* eligible for that position. David also asserts that he was more qualified for the position because he had successfully served as an Acting Sergeant eight prior times, whereas Marakovich had never served in that role. When viewing these facts in the light most favorable to David, the Court finds that David plausibly pleads claims of discrimination based on race and national origin.

### B. *Age Discrimination Claims under the ADEA (Count 3)*[9]

David also sufficiently pleads an age discrimination claim under the ADEA. As before, a plaintiff suing under the ADEA need not plead a prima facie case of discrimination. *See Craddock v. Lincoln Nat'l Life Ins. Co.*, 533 F. App'x 333, 335–36 (4th Cir. 2013); *Swierkiewicz*, 534 U.S. at 515 ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss."). Instead, a plaintiff must merely allege that the employer "discriminate[d] against [him] with respect to his compensation, terms, conditions, or privileges of employment, because of [his] age." 29 U.S.C. § 623(a)(1); *see Craddock*, 533 F.

---

[9] "Before a plaintiff may file suit under . . . the ADEA, he is required to file a charge of discrimination with the EEOC." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019); *see* 29 U.S.C. § 626(d). Here, David may sue under the ADEA because he first filed an EEOC charge—which contained an age discrimination claim—on June 22, 2020.

7

App'x at 336. Courts may, however, "look to the requirements of a prima facie case as a *guide* in assessing the plausibility of [a] plaintiff's claim for relief." *Georges v. Dominion Payroll Servs., LLC*, No. 3:16cv777, 2017 WL 3669029, at *4 (E.D. Va. Aug. 24, 2017) (emphasis added) (quoting *Craft v. Fairfax Cnty. Gov't*, No. 1:16cv86, 2016 WL 1643433, at *4 (E.D. Va. Apr. 26, 2016)). In the ADEA context, this means showing that the plaintiff (1) is more than forty years old; (2) suffered adverse employment action; and (3) performed his job in accordance with his employer's expectations; and (4) that the employer selected an individual younger than forty years old for the position. *See Craddock*, 533 F. App'x at 335–36.

David pleads, and RPD does not dispute, that he is more than forty years old, that he met RPD's employment expectations, and that Marakovich is under the age of forty. RPD argues only that David did not suffer adverse employment action. But the failure to promote David to Acting Sergeant constitutes an adverse employment action because it caused David to miss out on a salary increase and a permanent promotional opportunity. David, therefore, sufficiently pleads an age discrimination claim under the ADEA.

### C. Retaliation Claim under Title VII (Count 4)

Finally, David asserts a plausible Title VII retaliation claim. Title VII forbids an employer from discriminating against its employee "because [the employee] has made a charge [of discrimination]." 42 U.S.C. § 2000e-3(a). At the pleading stage, a plaintiff must plausibly "allege facts establishing [1] that he engaged in a protected activity, [2] that his employer took an adverse employment action against him, and [3] that . . . a causal link [exists] between those events." *Savage v. Maryland*, 896 F.3d 260, 276 (4th Cir. 2018). David satisfies this standard.

### 1. *Protected Activity*

David engaged in protected activities. Protected activities include making complaints through internal company procedures, *see Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021), and to the EEOC, *see Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998). Because David both complained to RPD leadership and filed a formal EEOC complaint, he engaged in protected activities.

### 2. *Adverse Employment Action*

David also sufficiently pleads that RPD took an adverse employment action against him. To satisfy this element, "a plaintiff must show that a reasonable employee would have found the challenged action *materially* adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019) (emphasis added) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). This means that the plaintiff must suffer "significant," not just "trivial," harm. *White*, 548 U.S. at 68.

Materially adverse action includes an employer's retaliatorily creation of a hostile work environment. *Von Guten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) ("Retaliatory harassment can constitute adverse employment action . . . ."), *abrogated on other grounds by White*, 548 U.S. 53 (2006). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . ; and whether it unreasonably interferes with an employee's work performance." *Id.* Courts may also look at "how others were treated in the same workplace" to determine whether a hostile work environment existed. *Perkins*, 936 F.3d at 209–10.

Consistent with these standards, "retaliatory work assignments," constitute "a classic and 'widely recognized' example of 'forbidden retaliation.'" *White*, 548 U.S. at 71 (quoting 2 EEOC 1991 Manual § 614.7, at 614–31 to 614–32). Moreover, placing a plaintiff on a performance improvement plan ("PIP") that threatens termination if the plaintiff fails to improve his performance can amount to materially adverse action. *Emami v. Bolden*, 241 F. Supp. 3d 673, 685 (E.D. Va. 2017). Actions that cause "irreparable damage to the plaintiff's reputation or ability to perform his work" also "can potentially rise to actionable retaliation." *Chappell v. Sch. Bd. of City of Va. Beach*, 12 F. Supp. 2d 509, 516 (E.D. Va. 1998).

Conversely, materially adverse actions do not include "petty slights, minor annoyances, and simple lack of good manners." *White*, 548 U.S. at 69. In addition, a written or oral reprimand that has no "collateral consequences is not materially adverse" because it causes "no detriment—employment-related or otherwise—besides bruised feelings." *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 812, 831 (E.D. Va. 2016); *see Parson v. Wynne*, 221 F. App'x 197, 198–99 (4th Cir. 2007) (stating that a negative performance evaluation would not "dissuade[] a reasonable worker from making or supporting a charge of discrimination" (quoting *White*, 548 U.S. at 68)). When viewed in isolation, five of the instances involving Nierman do not amount to materially adverse action. Nierman's failure to intercede when Fowler tried to provoke David, and Nierman's decision to ask another MPO to assist with rollcall, amount to nothing more than "petty slights." Nierman's decision to permit another officer to take David's keys similarly constitutes a "minor annoyance." David also offers no facts asserting that Nierman's oral reprimand, "You know that's a write up," included collateral consequences. (ECF No. 21 ¶ 39.)

10

Finally, although Nierman allegedly failed to provide David with adequate protective gear and additional support, David does not state that he suffered any harm from this action.[10]

Even so, David's allegations involving Nierman satisfy the materially adverse action element. Just as an employee on a PIP may face possible termination if he fails to improve his performance, Nierman's statement that he wished to "take [David's] stripes" plausibly constitutes a threat of possible termination if David continued to pursue his discrimination claims. (*Id.* ¶ 34.) David also plausibly suffered harm to his professional reputation when Nierman falsely told another sergeant that David and his partner "were out of their designated patrol areas." (*Id.* ¶ 35.) And although David does not state that any collateral consequences followed his written reprimand, he implies that RPD engaged in disparate treatment because RPD "has not historically . . . issued" written reprimands to others for failing to appear in Juvenile and Domestic Relations Court.[11] (ECF No. 21 ¶ 44.) Moreover, the five instances involving Nierman that do not amount to materially adverse action on their own may demonstrate retaliation when viewed collectively, as they all occurred within a five-month span, and at least one—Nierman's failure to intercede when Fowler tried to provoke David—caused him humiliation. Thus, David sufficiently pleads that RPD engaged in adverse employment action.

### 3. *Causation*

Finally, David sufficiently pleads a causal relationship between his protected activities and Nierman's retaliatory conduct. To establish causation, "a plaintiff must show that the

---

[10] Although David asserts that Nierman "showed very little concern for [David's] safety," (ECF No. 21 ¶ 36), David does not allege that Nierman's conduct actually put David in harm's way or hampered David's ability to perform his job.

[11] *See Perkins*, 936 F.3d at 209–10 ("While this Court has held that the primary focus in the hostile work environment analysis is on the plaintiff's experience, evidence of how others were treated in the same workplace can be relevant to a hostile work environment claim.").

decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Roberts*, 998 F.3d at 124. A close "temporal proximity" between the protected activity and retaliatory conduct also sufficiently establishes causation. *Strothers v. City of Laurel*, 895 F.3d 317, 336–37 (4th Cir. 2018); *see Williams v. Cerberonics, Inc.*, 871 F.2d 452, 453–54, 457 (4th Cir. 1989) (finding a causal connection where an employer fired the plaintiff more than three months after she filed an employment discrimination complaint). Here, RPD does not dispute Nierman's knowledge of David's internal and EEOC complaints. David also alleges that Nierman began retaliating against him within two months of RPD's human resources department concluding its investigation into David's internal complaint. The incidents of retaliation continued through June 2021, a year after David had filed his EEOC complaint. David, therefore, satisfies the causation element.

\*     \*     \*

Because David sufficiently pleads that he engaged in protected activities, that RPD took materially adverse employment actions against him, and that a causal link existed between his protected activities and RPD's materially adverse actions, his Title VII retaliation claim survives.

### III. CONCLUSION

For the foregoing reasons, the Court will deny RPD's motion to dismiss. The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 13 My 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge